Coos,
May 5, 1953. } No. 4193.

STATE

*v.*

483 CASES OF CIGARETTES.

*Louis C. Wyman,* Attorney General and *Warren E. Waters,* Assistant Attorney General (*Mr. Waters* orally), for the State.

*McLane, Davis, Carleton & Graf* and *Stanley M. Brown* (*Mr. Brown* orally), for the claimant McKee.

DUNCAN, J.  These proceedings originate under the provisions of R. L., c. 79, as amended, relating to the tobacco tax; and some understanding of the nature of the act is essential to a comprehension of the issues. The act imposes a sales tax "upon the value of all tobacco products sold at retail in this state." R. L., c. 79, s. 5. *Havens* v. *Attorney General*, 91 N. H. 115. The tax is collected by means of stamps evidencing payment, which are required to be affixed prior to sale to the consumer (s. 11), " to the smallest packages containing the tobacco products in which such products usually are sold at retail." (s. 5).  To aid in administration of the act persons engaged in manufacturing, distributing and retailing tobacco products destined for retail sale are required to be licensed (ss. 1, 2, as amended by Laws 1947, cc. 133, 238; Laws 1949, c. 187).  Under the amended act such persons are classified as manufacturers, wholesalers, sub-jobbers, vending machine operators, and retailers (s. 1, *supra*). All but retailers are required to affix tax stamps "at any time before tobacco products are transferred out of [their] possession" (s. 11), except where sale is by one licensee to another, exclusive of vending machine operators (s. 14). Retailers are required to affix stamps within twenty-four hours after obtaining possession of unstamped products (s. 11).

In 1947, to prevent evasion of the tax by importation from without the state, the statute was extended to "unclassified importers," defined as any person not within the other classifications made "who shall import . . . from without the state tobacco products for use or consumption within the state." *S.* 1 XVI; Laws 1947, c. 238.  Unclassified importers are required to procure licenses and to pay a tax, but the tax is not required to be evidenced by stamps. Purchases are to be reported within twenty-four hours of receipt of unstamped products, and the tax to be paid within ten days after notification of the amount of the tax.  *S.* 5.

Section 5 further provides: "No tax is imposed on any transaction, the taxation of which by this state is prohibited by the constitution of the United States," a provision apparently designed to avoid conflict with Article I, ss. 8 and 10, of the Constitution of the United States. Transactions in interstate commerce are thus not to be taxed.

The evidence established that the claimant was not licensed under

any provision of the act, but it did not establish that she was required to be. She was not shown to have "an established regular place of business" in the state within the definition of a wholesaler or sub-jobber (s. 1). The findings described the premises to which the goods were delivered as "an ordinary country farm house." There was no evidence that the claimant was engaged in selling at retail or that she acquired the cigarettes for "use or consumption within the state" (s. 1), or that she intended to sell them here. Since each case of cigarettes contained fifty cartons of twenty packages, it is not reasonably to be inferred that they were acquired "for use or consumption" here, rather than for resale. The cigarettes were seized immediately upon their arrival at the claimant's premises, and hence before stamps were required to be affixed if for retail sale, or notice to be given if received by an unclassified importer (ss. 5, 11).

Section 11 of the act states the duties of members of the classified groups with respect to affixation of stamps. Section 12, as amended, imposes a penalty for violation of the following prohibition: "No manufacturer, wholesaler, sub-jobber or vending machine operator shall sell, and no other person shall sell, offer for sale, display for sale, or possess with intent to sell any tobacco products not properly stamped hereunder, provided a licensed retailer may keep on hand at the location for which his license is issued unstamped tobacco products for a period not exceeding twenty-four hours." The act provides for no presumption of intent to sell arising on proof of possession alone (cf. McIntire v. Borofsky, 95 N. H. 174), although section 12 as amended, states that unstamped products in the possession of a retailer "shall be presumed to be held by him for more than twenty-four hours unless proof be shown to the contrary."

The State claims no violation of the statute by the claimant by reason of failure to obtain a license, or of possession of unstamped products with intent to sell within the state, or for use or consumption within the state. The libel is based solely on section 15 of the act, upon the theory that all unstamped products not expressly excepted in the section are thereby made subject to forfeiture, and that the affixation of stamps is required "to prevent fraud upon the revenue laws"; and that even though the products are intended eventually for disposition outside the state and hence not taxable, they are required to be stamped. The section relied upon provides as follows: "15. FORFEITURE. Any tobacco products found at any place in this state without stamps affixed thereto as required herein, unless they shall be in the possession of a licensed manufacturer, wholesaler,

sub-jobber or vending machine operator, or unless they shall be in the course of transit from without this state and consigned to a licensed manufacturer, wholesaler, sub-jobber or vending machine operator, or a licensed retailer, or unless they shall have been received by a licensed retailer from without the state within twenty-four hours, or unless they shall have been imported, received, or acquired within twenty-four hours by a licensed unclassified importer who has notified the tax commission as provided in section 5, shall be forfeited in the manner provided by chapter 432 of the Revised Laws." Laws 1947, c. 238, s. 5.

The principal issue presented by the contentions of the parties centers about the interpretation to be given to the words "as required herein" in the phrase "found . . . without stamps affixed thereto as required herein." S. 15, *supra*. The State contends that they refer to the *method* of affixation, the requirement that stamps be affixed to the smallest package which are usually sold at retail. S. 5. The claimant asserts that they refer to the requirements of the statute generally, including those prescribing the *time* when, and the *persons* by whom stamps must be affixed.

More broadly, it is the State's position that the Legislature intended forfeiture of any unstamped cigarettes found within the state under circumstances not within the four categories specified by section 15. The claimant contends that these categories are not to be deemed exclusive; that the act contemplates, that unstamped products may lawfully be possessed within the state under circumstances not included in the categories, and that a violation of some positive requirement of the act must be established before forfeiture can be had.

In our opinion the claimant more accurately expresses the intent of the Legislature as disclosed by the act. The act nowhere provides that stamps shall be affixed to all tobacco products within the state, whether taxable or not, if not within the excepted categories of section 15. Section 15 requires forfeiture of products found "without stamps affixed . . . as required herein." As previously noted, the circumstances under which stamps are required to be affixed are prescribed by section 11, namely; "before tobacco products are transferred" by the classified handlers other than retailers, and "within twenty-four hours after coming into possession" of a retailer. The persons required to affix the stamps are thus the persons in the marketing chain leading to retail sale. Section 12 does not require the affixation of stamps, but prohibits sale, and possession with intent

to sell of any product "not properly stamped hereunder," by anyone; except that manufacturers, wholesalers, sub-jobbers and vending machine operators are permitted to have such possession until transfer, and retailers for twenty-four hours only. Products "not properly stamped hereunder," within this section, would seem to refer to the requirement of affixation to the "smallest packages" which appears in section 5.

"Stamps affixed . . . as required herein" (s. 15) appears to have a more inclusive meaning. The circumstances must first be shown to be such that stamps are "required herein" to be affixed, before it can be established that stamps are not so affixed.

This interpretation is consistent with other provisions of the act. There appears to be no dispute that goods in interstate commerce are not subject to tax, particularly in view of the exclusion from the tax of transactions made exempt under the Constitution of the United States. *S. 5.* Such commerce would frequently, if not usually, involve transportation in original "factory-sealed" cases. No requirement is reasonably to be implied that stamps shall be affixed to individual cigarette packages under these circumstances, when they are not taxable, and no provision is made for the redemption of used stamps, or stamps destroyed after affixing, or stamps returned by any unlicensed classified handler. *S. 9. Cf.* 26 U. S.C. A., s. 2136. In fact, it is doubtful if the act permits the sale of stamps to unlicensed persons (see *s.* 7); and only persons required to be licensed are required to affix stamps. *S. 11.* Thus a person engaged solely in interstate commerce does not appear to be entitled either to a license, or to purchase stamps.

Again, unclassified importers are neither required nor permitted to purchase stamps; yet it would hardly be contended that unstamped tobacco products in their possession solely "for use or consumption" (*s.* 1) would be subject to forfeiture *after* payment of the tax, although such products come within none of the excepted categories of section 15.

Reasonable interpretation of section 15, with due regard to other provisions of the act, appears to us to require the conclusion that the phrase "stamps affixed . . . as required herein" uses the latter words in an inclusive sense, to mean affixed in the manner, and at the time, and by the persons, specified by the act. See *Moore* v. *Coates* (D. C. Mun. App.) 40 A. (2d) 68, 70, and cases cited. Since as thus interpreted the act did not require that stamps be affixed to the claimant's cigarettes under the circumstances shown by the evidence, the Trial

Court correctly ruled that they were not "found . . . without stamps affixed . . . as required" by the act, and forfeiture was properly denied. R. L., c. 432, s. 7.

It may be true that the interpretation of section 15 thus adopted accords no essential function to the exceptions stated in the section. The effect of the section would be the same without them, because other provisions drawn into the section by the words "as required herein" indicate that stamps are not required under the circumstances specifically enumerated in the section. But to give controlling importance to the exceptions, as the State would have us do, would produce in cases involving interstate commerce and unclassified importers, and possibly in other circumstances, consequences which the Legislature is not reasonably to be found to have intended. We therefore infer that the exceptions in section 15 were inserted out of caution, to permit no doubt that the classes of persons specified were exempt from a harsh penalty in the circumstances stated.

The conclusion reached makes it unnecessary to consider the ruling that the goods were not in interstate commerce when seized, to which exception was taken by the claimant. A contrary ruling would have called for the same decree. For like reasons the remaining exceptions of the parties appear to require no consideration.

*Judgment for the claimant.*

All concurred.